Good morning, Your Honors. Frank Sparrow is appearing for Petitioner Gallardo. Now, we have a number of cases here, and they all seem to be dealing with the same issue. And I think we're all making the same argument, that the Board, in this case, impermissibly poured the wine of Bautista into the new bottle of Valenzuela Gallardo. Their interpretation has been soundly rejected by two courts, the home panel, Salazar-Luviano. They both explicitly said that the Board's reasoning is, in fact, unreasonable, that you can't have a mens reis without an actus reis. All of those, the Juan case and Salazar-Luviano, make it abundantly clear that the federal definition explicitly requires an extant judicial proceeding. The reasoning – Excuse me. Forgive me, but I'm having a hard time understanding you. Oh. This room is very echoey, so if you could maybe – Just move the mic a little closer. So it was an intellectual problem that was oral. I don't think so. It should be both. So far, it's just a volume problem. I understand. Anyway, I mean, our point is, I think, you know, we are in the often murky land of the modified categorical Chevron deference, but I don't think this case is complicated. I mean, I would stand on the reasoning, the sound reasoning, of the home panel and Salazar-Luviano, which said very specifically, the federal definition is what will control, and it requires a judicial proceeding. But the federal definition doesn't require a pending proceeding. That's where I get lost. Well, I think the Adler case, the Supreme Court case. Well, that's 1503. But if you look at the entire – the entirety of the chapter, in fact, the definition in part says that a proceeding need not be pending. And I instruct juries all the time that there need not be a proceeding pending. Well, I don't think that's – yeah. Well, I mean, I would have to disagree. Between 18 U.S.C. 1501 through 1521, it's almost like a mantra. It says official proceeding in every single part of the statute. The board in Valenzuela quotes 1521a1c, which essentially is about probation violations, where you talk about the possible commission of a crime, which by definition there's already been a judicial proceeding. But most importantly, however, I mean, we – the Adler case and Hong and Salazar-Luviano did construe the Federal Obstruction of Justice statute as requiring an ongoing judicial proceeding for the very simple reason that we have deferred to the Espinoza case that says there has to be an actus reus and a mens reus and kind of first principles. You can't have a mens reus without an actus reus. But we have an actus reus in the BIA definition. Well, no. But the actus reus has to be an actual proceeding, and that is what the Hong panel absolutely explicitly says. I mean, it can't be denied that that's the holding of Hong and Salazar-Luviano. Salazar-Luviano is almost comical, right, that the defendant sprung pretrial inmates. There was inevitability as to a judicial proceeding, but that panel said without a judicial proceeding, that's not obstruction of justice. Pretty clear. I mean, that's sort of our reasoning in the sense that, I mean, there's nothing in the BIA in Valenzuela-Gallardo. They're, you know, this is a little bit of what we quoted in the Mercado case, is that essentially they're resurrecting a definition that's been rejected by two courts. I mean, by necessary implication, the Hong panel and the Salazar-Luviano panel did not engage in skidmore deference. They rejected the board's argument in Bautista. So to me, the landscape is actually clear, which is rather rare in immigration. I mean, we stand on those two cases. What about Renteria? How does that play in? Well, Renteria still, you know, it's found for the government because they found that there was a judicial proceeding, right? I mean, that is the holding of Renteria. There most certainly was a case. That's exactly what Renteria says. So, I mean, it said sort of, you know, is a straight line of cases, right? Renteria didn't say Bautista was wrong. It said here we don't have to. You know, and they quoted the other Ninth Circuit cases. They quoted Aguilar because in that case there was a judicial proceeding. That's the sine qua non of obstruction of justice as defined by the Supreme Court in Aguilar. That's unambiguous. I mean, to me, again, there's been a lot of, you know, trees died for this case, but I don't think it's that complicated. Do you want to reserve? I'll reserve, yes. Okay. Our next slide, please, is the petition to rescind a felony from the government. May it please the Court. Rebecca Hoffberg Phillips on behalf of the United States Attorney General. The Petitioner's conviction for accessory to a felony in violation of California Penal Code Section 32 should be found to be an aggravated felony offense under 101A43S as an offense relating to obstruction of justice. The Court is not ruling on a clean slate here today. There have been prior case law. Your Honor asked about the significance of renteria. The significance of it is that there the Court recognized that the phrase is ambiguous, which means that the Court has already held that this phrase is ambiguous, and therefore the question before the Court today is whether the Board has defined the phrase reasonably. Well, one of the concerns I have in all of these cases is notice, because the petitioners need notice of what crimes might expose them to immigration liability, and every day people, lawyers go into court with their clients, and they make decisions about what charges they might plead to based on some immigration consequences. So what would you say the elements are, as defined by the Board, that could communicate to lawyers at what risk their clients are? Well, so the elements of an offense relating to obstruction of justice are an affirmative and intentional attempt, motivated by a specific intent, to interfere with the process of justice, where the process of justice has now been defined to include interference with another person's arrest or apprehension, irrespective of the existence of an ongoing criminal investigation or proceeding. That would be the definition that you could derive from Valenzuela-Gallardo. In terms of the notice, well, let me ---- Well, that's coming up in another case in terms of retroactivity. But we just want to be, it has to be sufficiently clear that lawyers can talk to their clients and say, okay, this, if you plead guilty to this offense, it's going to have immigration consequences. And Batista, the case in Batista, which specifically addressed accessory after the fact under the federal statute, Section 3, or, yes, Section 3, basically was a clear notice of the Board's position on accessory, which predates all of the Court's precedent and the Espinoza decision and the Valenzuela decision. And the fact that CPC 32 and the other statute we're going to discuss in another case that are accessory types of offenses are so clearly similar to the federal accessory offense that the fact that that federal offense was specifically found to be an obstruction of justice aggravated felony would be clear notice to an attorney, to anybody here in the U.S., that that type of offense is going to be considered an obstruction of justice aggravated felony. Well, we've seen some pretty far-fetched examples of accessory after the fact, just not in the immigration context, but in the sentencing context that are arising out of the same California statute. So it's a fairly broad-sweeping statute. Basically, the nuns and the sound of music can be swept in. Well, it is. I mean, in terms of the type of the problem, I think, with the actus reus component, which is, I think, what you were sort of getting at in terms of how broad it is, the problem is that you can obstruct justice in such a variety of ways. I mean, you look at these statutes and, you know, you can do so many different things you could. That's the problem. That's the point. Right, right. But, see, that is the point, that it doesn't matter the manner in which you obstruct justice in terms of did you destroy evidence, did you harbor someone and conceal them, did you warn someone, did you drive them away from a shooting, did you hide them under a mask. Did you give a rambling answer at a grand jury investigation? I'm sorry? Did you give a rambling answer at a grand jury investigation? Yeah, well, I, but. I mean, if giving a rambling answer is the United States' claim, under oath is an obstruction of justice, then I have to say I've read a lot of immigration transcripts and everybody's out of the country. I mean, that's just what happens under oath in immigration. I mean, this is a fairly broad concept. It is broad, but in terms of the actions that can be taken. And that's why a lot of actions have the effect of obstructing justice. And what the Board has made clear is that that's why this definition is so focused on the specific intent. It has to be more about the intent than any actual specific action, because you can't define any one action that would be obstruction of justice. I mean, if you take a look at the obstruction of justice code, even under Section 1512 alone, you go from murdering someone to dissuading someone to doing all varieties of things. And the problem is that if you define such a term as obstruction of justice based on an actus reus, like emphasizing different types of actions, there's no way to encompass all of those actions. And so the intent is what has to be important in obstruction of justice, because that is what's at the heart of what someone is doing in any manner of ways. It's about their ---- So this new definition requires intent to obstruct the process of justice. What does that mean? So the process of justice, you know, in terms of how it was in Valenzuela-Gallardo, the trial, punishment, conviction, apprehension, basically the consequences of having committed a crime. And so the process of justice, you know, in terms of bringing the proper consequences to the criminal. And that's what an accessory act of the facts specifically does. Their crime wasn't the underlying crime. Their crime was exactly obstructing justice. The process of justice. The process of justice, right, in terms of what that means. But how is driving a getaway car, for example, interfering with the process of justice? Well, it prevents the perpetrator of the crime from being caught. See, the problem, you know, if you're talking about intent being a critical element, to me that suggests that we have to go to the modified categorical approach, because there are some statutes that might not have the same level of intent. Well, we're arguing today under the categorical approach. I know. That's right. Right. And I do think that as long as you have a specific intent to interfere with someone's apprehension, trial, conviction, punishment, you know, in terms of bringing that person to the proper consequences of their criminal actions, that is what you're looking for in the statute. The specific intent to prevent that from happening. And that's why, for example, misprision of a felony was found to not be an obstruction of justice aggravated felony, because even though it had the effect of obstructing justice, as many of our actions might inadvertently do every day, you have to have the right intent. And that's what narrows the scope of offenses down to those which really are interfering. It's an interference, basically. But it's an interference that someone undertakes purposefully with the intent that the crime, they know a crime has taken place, first of all. That's first and foremost. In an accessory statute, CPC 32, the elements are you have to know someone committed a felony, and you have to know that you're taking the action, whether by aiding, harboring, concealing. You know what you're doing. Do you have to know it was a felony? The statute says it's accessory to a felony. And so I have to know not only that a crime has been committed, but that that crime was a felony? It's – that's an interesting question, and I don't know to what extent the – to be found convicted of the statute itself, the person did have to commit a felony. And that's different, of course, than whether I have to know it was a felony when I respond. Right. See, I'm not sure that that's captured in the California statute, for example, the knowledge that it's a felony, because you can harbor a fugitive without knowing necessarily what the crime was that the fugitive committed. Actually, you know, I'm reading – I'm looking at my notes right now at People v. Plengsingtip, a California case. It's saying the crime of accessory requires proof that, number one, someone other than the accused, that is a principal, committed a specific, completed felony. The accused have harbored, concealed, or aided the principal. Three, with knowledge that the principal committed the felony or has been charged or convicted of the felony. And four, with the intent that the principal avoid or escape from arrest, trial, conviction, or punishment. They are suggesting – I mean, the way I read this is with knowledge that the principal committed the felony. Right. You know, it's different. It's one thing if I know that this person that I'm harboring knocked off a convenience store, and it's – that's different than knowing that that conduct constituted a felony. I'm not sure from what you just read which is required. I'm not trying to be difficult, but I am trying to figure out what are the limits. Right. Whether someone knows the severity of what it is that they're preventing from doing. Yes. You know, and I think that the – I mean, chances – a lot of felonies – I mean, I'm just saying from a common sense perspective, you know that robbery or murder or some of these other things that are the common examples of where I've seen excessive – I mean, I'm sure there are much lesser offenses. And chances are they're not going to end up with a possible one-year requisite sentence that you need to be an aggravated felon under the board's definition just in terms of, you know, the severity of the offense. It does have to be a felony under the CPC 32. And, in fact, it seems in many of the accessory statutes that I've seen that it does have to be a felony knowledge that someone committed a crime and that that crime was a felony. And I understand where Your Honor is getting. Does someone know that? The case law isn't specifically looking at that knowledge of the felony from what I've seen. So why isn't the modified categorical approach appropriate? Because if it's – you know, if the range of conduct covered by the statute could encompass somebody who doesn't know that the felony is committed, then shouldn't we look at a modified categorical approach? Well, that's not an element of the statute that you need to be concerned with. Because whether someone knew that it was a felony, it's that they knew they were concealing a crime. Whether that crime – I mean, in terms of how the board has phrased its definition and the fact that accessory offenses happen to specifically address felony offenses is not really part of what we're matching up here. Whether someone knew it was a felony offense, whether someone knew it was a misdemeanor  crime, and was preventing the perpetrator of that crime from being brought to justice in the process of a trial, apprehension, conviction, punishment, things of that nature. And so – because misdemeanor crimes could very well – you could obstruct justice in a misdemeanor context. Certainly. Certainly that's possible. It doesn't have – I'm saying not under the accessory statutes. But in another context, it could – Are you saying any crime at all? What I'm saying is any time someone knows that a crime – Right. So somebody runs a red light, and they're at home, and the – because some of the California cases, as you probably know, say if you answer the door and say someone's not here, that could be accessory after the fact. So runs a red light, say they're not home, out of the country as an aggravated felon for being an accessory to a misdemeanor? I mean, that seems – that seems a little odd to me. Well – Because why would the board say that it's worse, it's more punishable to be an accessory to, say, a misdemeanor, and so the person who commits the crime doesn't go out of the country. The person who harbors the misdemeanant has to be deported. Your Honor, there is no realistic probability that I've seen under the Duenas-Alvarez approach in terms of how this has been applied and how, for example, the – for example, CPC 32 would never be applied in that context because that's not a felony to run – No, I know. I'm just talking more broadly about this. Right. But I'm – But I was responding to your – your argument that it didn't matter whether it was a felony or not. Well, I – for the purposes of the board's definition, they're not distinguishing between obstruction of justice or a felony. That's not – what I'm saying is that's not part of their definition, and that's why the modified categorical approach would not be involved if they said that was part of their definition, and then we needed to figure out whether a statute was a felony or a misdemeanor. Yes, but explain to me why it would be reasonable for the board to say that being an accessory constitutes an aggravated felon – felony for the purposes of immigration law, but the underlying crime did not. Well, so there is something to be said about somebody's character and somebody's – you know, I think the problem is that when you're obstructing justice, it's showing kind of a disrespect or a nonchalance for how the law works here. You know, and you're not – and you're doing it specifically. It's not by accident. You have to be doing something knowing that what you're doing is preventing our judicial system from being able to do its job. That's a much more serious concept, and I understand that the underlying crime – but again, I have not come across any case where there has been a statute applied in such a manner that – a minor crime where somebody has done, you know, obstructed justice in a minor crime. I have not seen them end up – I'm not – I don't know exactly what minor crimes you're talking about. A traffic offense has not come up in any of the case law, and it wouldn't be – Well, that's because the board's definition is new. But I'm saying in terms of how accessory has been applied in the State courts. Well, you should take a look at the cases, you know. Some of them are very broad. Yeah. And I'm – because it is a broadly worded statute. It is. But in terms of the realistic probability that that person – But we're not talking about realistic probability here. We're talking about whether we apply a categorical approach or modify a categorical approach to some of these statutes. Well, the government – I see I'm running – And your position, as I understand it, is it doesn't matter if they're obstructing justice, no matter how minor the offense, underlying offense, they're out categorically. They have to meet the board's definition. So they have to have a specific intent to interfere with the process of justice, and there has to have been a criminal – a crime that took place, an actual crime. No matter how small. What? No matter how small. Well, the board hasn't specified what type of crime. It – but the specific intent and the requisite one-year sentence for whatever that person's accessory – the accessory conviction must result in a sentence of at least one year, which certainly goes to the severity of the type of accessory that would have been involved in an offense, you know, in terms of how – you know, what type – what exactly did they do. The sentence is going to indicate to some degree how serious of a violation that it was. So that's putting some limits just by the sentence alone. And the fact that the board has said that not every action with the effect of it, you know, with the intent – you know, I understand that certain crimes might be common-sense way that you would expect that someone who does those actions would be considered an accessory, not by accident. They purposely did something. And, Your Honor, I see that my time has expired, but I'm happy to answer. Thank you, Counsel. Very briefly, Your Honors. This Court has properly invoked the sound of music in Barry Bonds to demonstrate the vaporous nature of accessory of the fact, which is why the Federal courts have required a judicial proceeding. Let me just very briefly quote language that cannot be considered ambiguous in the Hong case. Well, Barry Bonds was a judicial proceeding, right? Right. It was a grand jury proceeding. Right. So the definition would fit with Barry – the old definition would fit with Barry Bonds. It doesn't help in that case. That's the case of, you know, when you're perjuring yourself or not with these sort of iffy answers. I was being a little snarky. I'm not sure that we're really focusing on Mr. Bonds. But, again, I will – the point is, in the Hong case, because Washington revised code does not require the necessary actus reus, the violation of that statute is not obstruction of justice. The Board said otherwise, and they said we owe no deference to the B.I.'s resolution of this question on appeal. So, I mean, the modified categorical has to be applied here, but it has to be applied in the sense that California 32 clearly contemplates judicial proceedings and it contemplates nonjudicial proceedings. Thus, the modified categorical analysis should apply. And in this case, there's no evidence that there was an ongoing judicial proceedings. I mean, my point is the Federal courts have been much more clear here. By requiring an ongoing judicial proceeding, it promotes certainty as opposed to the extremely vaporous nature of what is obstruction of justice. My brother's not Hong. But that doesn't address Judge Thomas' concern at all, does it? And that is, if you have a minor misdemeanor that you're obstructing, that might be a pending misdemeanor, and you're an accessory after the fact to that, under your definition, then maybe you do get deported because there's a pending proceeding. Well, first of all, you wouldn't be convicted under California because it requires a felony, right? Well, let's say some State law somewhere else. Right. Well, again, the point is that the idea that there's, you know, you need to have a judicial proceeding shows a greater depraved behavior, more premeditation. Right? You have to know that there's a judicial proceeding, and then you subvert it. It's very different than my wife's not home. Right? I mean, that's a very intelligent, bright line to draw. What about somebody who sexually molests somebody and then threatens them if they go to the police? There's no proceeding. There's nothing pending. And then that crime is never uncovered because of that threat. See, I don't understand the importance of the pending versus nonpending, as opposed to the issue of what underlying crimes are appropriate. I would just respectfully say that the Supreme Court in Aguilar, the panel in Huang, and the panel in Salazar-Luviano said it is important. In fact, it's dispositive. I mean, that's the nature of it. No, we did that. But, you know, under Brand Acts, we have to, you know, if the statute is ambiguous and everybody seems to concede that it is, then we defer to the board's definition unless it's impermissible or unreasonable. So where does that leave us? Well, I mean, I think that's what the board did. I mean, that's what the panel did in Huang. By necessary implication, they said it was unreasonable. I mean, that was their ruling. I mean, it can't be otherwise. Otherwise, they would have affirmed the BIA. Right? I mean, they clearly, by necessary implication, did not engage in any Skidmore deference. They said specifically that the analysis of the board was, you know, weak in the extreme. It's 90 words. I counted it. That's including the site. Well, we have additional analysis now from the BIA. What about that? Well, no, that's the case. Bautista is the one that defines it. And that's the case that the Huang and Salazar-Luviano panel said we reject their reasoning. We owe it no deference. In fact, there is no deference to definitional criminal statutes. But, you know, it's interesting. Salazar said whether an offense qualifies depends exclusively, exclusively, they said, on whether the elements of the offense constitute obstruction of justice as that term is defined in Chapter 73. And I think it was just two weeks before, in Renteria Morales, they found a failure to appear, a non-Chapter 73 offense the Ninth Circuit found to be an obstruction of justice offense. Right. And in Renteria, they state 3146 constitutes an intentional interference with judicial proceedings. That was the linchpin of Renteria. Salazar-Luviano is the strongest case I have. There can be nothing more inevitable about a judicial proceeding than people that were in pretrial detention. They hadn't been served with a charging document yet. That panel said, sorry, it's not obstruction of justice because they hadn't been charged yet. I submit the matter. All right. Thank you very much. The case is served. We submit it for decision. And we will proceed to the argument in Espinoza-Lugo v. Holder.
judges: Seabright, Thomas, Christen